UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FACTORY MUTUAL INSURANCE
COMPANY (as Assignee of ALBANY
MOLECULAR RESEARCH, INC. and OSO
BIOPHARMACEUTICALS
MANUFACTURING, LLC),

    Plaintiff,

v.                                                                           Civ. No. 17-760 GJF/LF

FEDERAL INSURANCE COMPANY and
DOES 1-10,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon the following three motions: Defendant's Motion for Summary Judgment [ECF 47] and Motion for Summary Judgment on the Expert Evidence [ECF 68], as well as Plaintiff's Motion for Partial Summary Judgment [ECF 50]. The Motions are fully briefed,[1] and the Court heard extensive argument on the motions on October 16, 2019. *See* Tr. of Omnibus Mtns. Hrg, ECF 114. As the Court indicated on the record at the hearing, ECF 114 at 200-01, the Court discerns genuine factual disputes between the parties on the material question of whether the mold contamination discovered in a clean room was "directly caused by" or "directly resulted from" lightning. Because it is the province of a jury with the full benefit of the adversarial process to resolve these disputes, the Court will **DENY** these motions.

---

[1] *See* ECFs 71, 87 (response and reply to ECF 47); ECFs 79, 103 (response and reply to ECF 68); ECFs 75, 90 (response and reply to ECF 50).

I.  BACKGROUND

On July 31, 2014, a lightning storm occurred near a manufacturing plant of OSO Biopharmaceuticals Manufacturing, LLC ("OSO") in Albuquerque, New Mexico. ECF 50 at 11. At approximately 6:23 p.m. that evening, a lightning strike was recorded within 0.2 miles of this facility, which at the time was being used to manufacture an injectable antibiotic, Cubicin (daptomycin), for treating complicated infections. *Id.* at 12.  Around this same time, the facility experienced a power interruption and doors leading from an interior "clean room" unexpectedly opened, while certain fans and other equipment shut down. *See* ECFs 47 at 3; 68 at 4; 71 at 8. Unacceptable levels of mold were later detected in this room, requiring OSO to discard the antibiotics that it was producing and cease further production until remediation efforts concluded in December 2014. *See* ECFs 47 at 5; 50 at 6; 68 at 3.

As a result, OSO submitted a claim for over $10 million in losses to Defendant Federal Insurance Company. *See* ECF 50 at 5.  Defendant paid OSO the maximum sublimit of $600,000 under two of its contract provisions. *Id.*  OSO then submitted a claim to Plaintiff Factory Mutual Insurance Company, which ultimately paid $7,385,110 to OSO for its losses. *Id.* at 6.  Plaintiff, as an assignee of OSO, now seeks reimbursement from Defendant. *Id.* at 5.

Plaintiff's fundamental claim in this litigation is that Defendant breached its insurance contract by not paying for the loss under its "Building and Personal Property for Life Sciences" ("BPPLS") provision, which provided much higher limits of coverage. *See* ECF 64 at 2-3. Defendant's BPPLS provision states that it will "pay for direct physical loss or damage to: building; or personal property, that is caused by or resulting from a peril not otherwise excluded." ECF 47-2 (Defendant's insurance policy) at 92.  Defendant's policy, however, generally excludes losses resulting from "contaminants" (e.g., mold), unless an exception applies:

2

> This insurance does not apply to loss or damage caused by or resulting from the mixture of or contact between property and a contaminant . . . . [unless] the mixture or contact is *directly* caused by or *directly* results from a specified peril [e.g., lightning] . . .

*Id.* at 104 (emphasis added).

There are two fundamental issues raised by these motions: (1) the meaning of the term "directly" in Defendant's BPPLS provision, which requires this mold contamination to have been "*directly* caused by" (or to have "*directly* result[ed] from") lightning for these higher limits of coverage to apply; and (2) whether there is a genuine issue of material fact as to whether lightning "directly" caused this contamination. *See* ECF 47 at 7-14; ECF 68 at 9-20; ECF 50 at 17-28.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing [substantive] law," and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 249 (1986)); *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U. S. 253, 289 (1968) (the question at summary judgment is whether a jury should "resolve the parties' differing versions of the truth at trial"). In evaluating such a motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party

opposing the . . . motion.'" *Scott v. Harris*, 550 U. S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U. S. 654, 655 (1962)).

### B. Applicable New Mexico Contract Law

"In cases arising under diversity jurisdiction, the federal court's task is . . . simply to 'ascertain and apply the state law.'" *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In such diversity actions, the federal court must "apply the substantive laws of the forum state," *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996), by "follow[ing] the most recent decisions of the state's highest court." *Wade*, 483 F.3d at 665-66 (citing *Wankier*, 353 F.3d at 866). And "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* at 666 (quoting *Wankier*, 353 F.3d at 866).[2]

"New Mexico law treats an insurance policy as an ordinary contract to be construed according to customary principles of contract interpretation." *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013) (citing *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997)). Consequently, "the interpretation of terms within an insurance policy is 'a matter of law about which the court has the final word.'" *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 647 (N.M. 2012) (quoting *Rummel*, 945 P.2d at 984); *Ace Am. Ins. Co. v. Dish Network, LLC*, 883 F.3d 881, 887 (10th Cir. 2018).

---

[2] In making such a prediction, the federal court may "seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (internal quotation marks and citations omitted). But the federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467 (1940). In addition, if the Tenth Circuit has "rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit . . . unless an intervening decision of the state's highest court has resolved the issue." *Wankier*, 353 F.3d at 866 (citations omitted).

### 1. *Ambiguities Construed Against the Insurer*

The New Mexico Supreme Court has opined that, "[a]s with other contracts, where an insurance policy's terms have *a common and ordinary meaning*, that meaning controls in determining the intent of the parties." *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 647 (N.M. 2012) (emphasis added) (internal quotation marks omitted). "But where a policy term is *reasonably and fairly susceptible of different constructions*, it is deemed ambiguous and must be construed against the insurance company as the drafter of the policy." *Id.* at 648 (emphasis added) (internal quotation marks omitted); *see also Battishill v. Farmers All. Ins. Co.*, 127 P.3d 1111, 1115 (N.M. 2006) (stating "it is the law in New Mexico that an insurance policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured" (internal quotation marks omitted)). And "this principle applies with added force" when "limitations upon coverage are concerned." *United Nuclear Corp.*, 285 P.3d at 656 (quotation marks omitted). Similarly, "[g]rants of coverage"—including through "an exception to an exclusion"—should be "construed broadly in favor of the insured." *Id.* at 649 (quotation marks and citations omitted).

In construing ambiguities "in favor of the insured and against the insurer," a court's interpretation "will be guided by the reasonable expectations of the insured." *United Nuclear Corp.*, 285 P.3d at 648 (internal quotation marks and citations omitted); *see also W. Commerce Bank v. Reliance Ins. Co.*, 732 P.2d 873, 875 (N.M. 1987) (emphasizing that "the test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean"); *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997) (stating that "ambiguous terms will be given the strongest interpretation against the insurer which they will reasonably bear" (internal quotation marks omitted)).

### 2. *Determining the Existence of an Ambiguity*

The New Mexico Supreme Court has not specifically stated whether, in the context of an insurance contract's requirement for causation, the term "directly" (or "direct") is ambiguous. *See, e.g., United Nuclear Corp.*, 285 P.3d at 647-48. The New Mexico Supreme Court has, however, provided additional guidance on determining whether a term is ambiguous. First, "[t]he insurance contract . . . will be construed as a whole." *Rummel*, 945 P.2d at 976 (citations omitted). Second, "[i]f any provisions *appear* questionable or ambiguous, [the court] will first look to whether their meaning and intent is explained by other parts of the policy." *Id.* (emphasis added) (citation omitted).[3] Third, the court has stated that ambiguities arise when, *inter alia*, "the language of a provision is susceptible to more than one meaning" or "a particular matter of coverage is not explicitly addressed by the policy." *Battishill*, 127 P.3d at 1115 (quoting *Rummel*, 945 P.2d at 976). Finally, "the language at issue should be considered not from the viewpoint of a lawyer, or a person with training in the insurance field, but from the standpoint of a reasonably intelligent layman, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words." *Rummel*, 945 P.2d at 976 (internal quotation marks omitted).

Although not directly binding on this Court, the Court of Appeals of New Mexico has implied in dicta that, in the context of an insurance contract's causation provision, the term "direct" is ambiguous:

> [D]oes the phrase encompass any *contributing cause* . . . . [o]r does the word "direct" mean that the . . . cause must be the *dominant cause* or the *immediate cause* . . . ? There are a myriad of cases defining the word "direct" in the context of insurance policy provisions—some equating it with "*proximate cause*" and others

---

[3] "If ambiguities cannot be resolved by examining the language of the insurance policy, courts may look to extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions." *Id.* (citation omitted). Such extrinsic evidence, however, has not been presented to this Court in support of a particular definition of the term at issue. *See* ECF 47 at 10-11; ECF 87 at 4-12; ECF 71 at 13-14.

stating that a "direct loss" is *"more than proximate cause . . .* [and] that the loss must flow immediately, either in time or space."

*Healthsouth Rehab. Hosp. of N.M., Ltd. v. Brawley*, 369 P.3d 27, 34 (N.M. Ct. App. 2015) (emphasis added) (quoting 3 Allan D. Windt, Insurance Claims and Disputes § 11:22C n.3 (6th ed. 2015) (collecting cases)).

## III. ANALYSIS

### A. "Directly" Caused Means Proximately Caused

The Court's first task is to determine the meaning of the disputed contractual provision. In other words, within Defendant's BPPLS provision—which requires the mold contamination to have been "*directly* caused by" (or to have "*directly* result[ed] from") lightning for higher limits of coverage to apply—the Court must determine meaning of the term "directly." ECF 47-2 at 104.[4]

In applying New Mexico substantive contract law—by following its most recent Supreme Court decisions, as well as predicting what that court would do in this particular situation—this Court concludes that the term "directly," as used in Defendant's BPPLS provision, is ambiguous. Specifically, in construing Defendant's insurance contract "as a whole," including by assessing whether this term is "explained by other parts of the policy," this Court is of the view that a reasonably intelligent layman would find the term "directly" (as used in the BPPLS provision) to be "susceptible to more than one meaning"—i.e., ambiguous. *Rummel*, 945 P.2d at 976 (internal quotation marks and citations omitted). Indeed, a reasonably intelligent layman would notice that certain causation provisions in Defendant's contract omit such terms as "direct" or "directly,"

---

[4] *See also* ECFs 47 at 10-11; 87 at 4-12 (Defendant arguing that "direct" cause means either a proximate cause or more than proximate cause (e.g., proximate *and* immediate cause)); ECF 71 at 13-14 (Plaintiff arguing that "direct" cause means *any* contributing cause "without which the loss would not have occurred").

7

while other provisions include such terms.[5] Such an individual would therefore likely view the term "directly" to not be superfluous but rather to mean *something*. Consequently, he or she would also likely conclude that the term requires something more than mere causation—i.e., that it requires "direct" causation. But what exactly constitutes "direct" causation in this context would indeed be "reasonably and fairly susceptible of different constructions," *United Nuclear Corp.*, 285 P.3d at 647, because the *degree* of "directness" required for certain perils (e.g., lightning) to directly cause certain contaminations (e.g., mold) could—as the Court of Appeals of New Mexico has observed, *Healthsouth Rehab. Hosp. of N.M., Ltd.*, 369 P.3d at 34—be one of at least several different options.

Given that the term "directly" in this context is ambiguous, this Court must therefore construe this term "in favor of the insured and against the insurer" while also being "guided by the reasonable expectations of the insured." *United Nuclear Corp.*, 285 P.3d at 648. In addition, "[a]s an exception to an exclusion," the clause in which this term is found[6] should likewise be "construed broadly in favor of the insured." *Id.* at 649. In applying these principles, this Court concludes that, at one extreme, the phrase "directly caused by or directly results from" cannot mean "any contributing cause" and that, at the other extreme, the phrase cannot mean "more than proximate cause." *See Healthsouth Rehab. Hosp. of N.M., Ltd.*, 369 P.3d at 34. In addition, this Court finds that a reasonable insured would not expect such causation to be "dominant" or "immediate," particularly in the context of certain perils causing contamination (and doing so "directly"). *Id.* Consequently, in continuing to apply all of the above-referenced principles in *United Nuclear*

---

[5] *See, e.g.*, ECF 47-2 at 104 (containing two separate causation provisions: one referring to "loss or damage cause by or resulting from a specified peril" and the other referring to "[contamination] *directly* caused by or *directly* result[ing] from a specific peril" (emphasis added)).

[6] *I.e.*, the clause that states "[unless] the [contamination] is directly caused by or directly results from a specified peril [e.g., lightning]." ECF 47-2 at 104.

8

*Corp.*, 285 P.3d at 648, this Court concludes that the fairest construction of the phrase "directly caused by or directly results from" is to equate it with proximate causation.

In further applying New Mexico law on proximate causation, this Court holds that to have "directly" caused the mold contamination, the lightning strike must have been "reasonably connected as a significant link to the contamination." New Mexico Uniform Jury Instruction ("UJI") 13-305 ("Causation (Proximate cause)") (commentary noting that "[t]he proximate cause element of causation is expressed by the phrase 'reasonably connected as a significant link'"). Therefore, should this case go to trial, the Court will likely give some form of the following jury instruction, which is patterned after UJI 13-305:

> The lightning strike is a direct cause of the mold contamination if it contributed to bringing about the contamination, and if the contamination would not have occurred without it. It need not be the only explanation for the contamination, nor the reason that is nearest in time or place. It is sufficient if it occurred in combination with some other cause to produce the result. To be a direct cause, the lightning strike, nonetheless, must have been reasonably connected as a significant link to the contamination.[7, 8]

---

[7] *See* UJI 13-305 (pattern jury instruction, with the following template: "An [act] [or] [omission] [or] [_____ (condition)] is a "cause" of [injury] [harm] [_____ (other)] if[, unbroken by an independent intervening cause,] it contributes to bringing about the [injury] [harm] _____ (other)] [, and if injury would not have occurred without it]. It need not be the only explanation for the [injury] [harm] [_____ (other)], nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause", the [act] [or] [omission] [or] [_____ (condition)], nonetheless, must be reasonably connected as a significant link to the [injury] [harm]."); *see also id.* (noting that such an instruction "should be used in *all* cases" involving the causation of harm or injury (emphasis added)).

[8] Regarding the Court's current exclusion of the "independent intervening cause" language in this preliminary instruction, the commentary to this instruction notes that, pursuant to *Torres v. El Paso Electric Co.*, 987 P.2d 386 (N.M. 1999), "the application of independent intervening cause" is "dramatically limit[ed]" under New Mexico tort law. *Id.* Specifically, under tort law, such a clause is only to be used when "there is an unforeseeable force, not in operation at the time the defendant acted, that is not a concurrent cause of the plaintiff's injury." *Id.* Because this "intervening cause" language (and the commentary surrounding it) seems to primarily apply to tort law, the Court tends to think that such language should not be part of its jury instruction. Furthermore, the four potential "intervening causes" cited by Defendant seem to have either existed *before* the lightning strike (e.g., the increased biomass of mold in the facility, the faulty electrical equipment controlling the doors, and the lack of an integral ceiling) or to be foreseeable (e.g., subsequent cleaning efforts being unsuccessful in completely eradicating all sources of mold), *see* ECF 47 at 13-14, ECF 87 at 8-11, and would therefore not qualify as "independent intervening" causes.

In sum, this Court holds that, in Defendant's BPPLS provision, the phrase "directly caused by or directly results from" means proximate causation, which requires the lightning strike to have been "reasonably connected as a significant link" to the contamination.

**B. Whether Lightning Proximately Caused the Contamination Is an Issue for Trial**

Defendant's first motion [ECF 47] claims that, although "Plaintiff offers some evidence that tenuously and indirectly connects the lightning strike to . . . mold contamination," Plaintiff lacks *any* evidence that such contamination "was *directly* caused by or *directly* resulted from lightning." ECF 47 at 9 (emphasis in original). And Defendant's second motion [ECF 68] goes even further and asserts that Plaintiff lacks any evidence "such that a reasonable jury," *Anderson*, 477 U.S. at 248, could find *any* (let alone direct) causation between the lightning and the contamination. ECF 68 at 1, 9 (arguing that Plaintiff lacked any "reliable scientific evidence" of such causation). In contrast, Plaintiff contends in its motion [ECF 50] that (under its broad "any contributing factor" standard of causation) there is no genuine issue that lightning did anything other than directly cause the contamination. ECF 50 at 20-28.

At the motions hearing, the Court intended to leave the parties with no doubt where it stood with respect to the dueling motions for summary judgment. *See* Tr., ECF 114 at 200-01. After further review of the parties' contentions and the evidence supporting those contentions, this Court concludes that "the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]," *Anderson*, 477 U.S. at 248, by finding that lighting proximately caused the mold contamination (and resulting loss to OSO). *See, e.g.*, ECF 71 at 7-8 (Plaintiff citing to expert evidence (1) from engineer Frank Roberts that lightning caused a power anomaly that in turn caused OSO's interior clean room doors to open and (2) from industrial hygienist Robert Adams that it was "more likely than not" that lightning caused these doors to open and these open doors provided a pathway for

10

the contamination); ECF ___ (order to be filed permitting Mr. Roberts and Mr. Adams to testify as expert witnesses). Consequently, the Court will deny Defendant's motions [ECFs 47, 68].

With respect to Plaintiff's Motion for Partial Summary Judgment [ECF 50], this Court likewise concludes that "the evidence is such that a reasonable jury could return a verdict for the [Defendant]," *Anderson*, 477 U.S. at 248, by finding that lighting *did not* proximately cause the mold contamination. *See, e.g.*, Mot. Hr'g Tr. at pp. 113-16 (discussion of engineer Aurora's opinion that the "several other possibilities" could have caused the contamination and Plaintiff's acknowledgment that its summary judgment motion [ECF 50] rested on its "any contributing factor" standard of causation). Consequently, the Court will deny Plaintiff's motion.

In sum, based on this Court's decision about the appropriate causation standard and this Court's decision to permit Plaintiff's expert witnesses Roberts and Adams to render opinions about the causation of the mold contamination, this Court holds that it is for the jury to "resolve the parties' differing versions of the truth" as to whether lighting proximately caused the mold contamination (and resulting loss to OSO). *First Nat. Bank of Ariz.*, 391 U. S. at 289.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the parties' motions [ECFs 47, 50, 68] are **DENIED**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*